**Opinion issued March 12, 2013**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-11-01022-CR

_____

**THE STATE OF TEXAS, Appellant**

**V.**

**JON PEDDY GOODARD, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 2**
**Harris County, Texas**
**Trial Court Case No. 1692630**

---

## MEMORANDUM OPINION

The State of Texas appeals the trial court's dismissal of the information charging Jon Petty Goodard with the Class B misdemeanor offense of driving while intoxicated. *See* TEX. PENAL CODE ANN. § 49.04(a), (b) (West Supp. 2012).

Goodard was informed that he was eligible to participate in the Harris County District Attorney's pretrial diversion program known as DIVERT (Direct Intervention using Voluntary Education Restitution and Treatment). The trial court, however, determined that the DIVERT program was in fact a form of deferred adjudication, which the legislature has specifically prohibited in DWI cases. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(d)(1)(A) (West Supp. 2012). Accordingly, the trial court refused to approve any DIVERT agreements.

Goodard filed a motion to dismiss the information, asserting he had been denied due process and equal protection under the Fifth and Fourteenth Amendments of the United States Constitution. After noting that the District Attorney's Office offered pretrial diversion outside of the DIVERT program to other defendants, the trial court granted the motion and dismissed the information. The State appealed. Following this court's recent holding in *State v. McNutt*, No. 01-11-01023-CR, 2013 WL 682893 (Tex. App.—Houston [1st Dist.] Feb. 26, 2013, no pet. h.), we reverse and remand.

## Background

Goodard was charged by information with a misdemeanor offense for DWI. *See* TEX. PENAL CODE ANN. § 49.04(a), (b). As a first-time offender, Goodard was eligible to participate in the Harris County District Attorney's DIVERT program. Under the DIVERT program, the defendant is required to enter a plea of guilty,

waive a jury trial and other constitutional rights, and agree to a punishment. A defendant's participation in this program requires the trial court's approval. If approved, the defendant's case is reset and a finding of guilt is deferred pending the successful completion of the program. If the defendant completes the program, the charges are dismissed at the reset hearing. If, however, the defendant does not successfully complete the program, the defendant is found guilty and sentence is imposed according to the agreement.

Harris County has other pretrial diversion programs, but they differ in many respects from the DIVERT program. Those "traditional pretrial diversion programs" do not require (1) the defendant to confess or waive constitutional rights, (2) the trial court to approve participation, or (3) the defendant to agree with the State on a punishment in advance. Additionally, in traditional pretrial diversion programs, the charges are often dismissed before the diversion occurs (although the State may re-file in some cases). In the DIVERT program, in contrast, the charges remain pending. *See McNutt*, 2013 WL 682893, at \*1; *State v. Dinur*, 383 S.W.3d 695, 698 (Tex. App.—Houston [14th Dist.] 2012, no. pet.).

The district clerk's office randomly assigned Goodard's case to a trial court—in this case, the County Criminal Court at Law Number 2. The presiding judge of that court determined that the DIVERT program constitutes deferred adjudication, a punishment that is specifically prohibited in DWI cases. *See* TEX.

3

CODE CRIM. PROC. ANN. art. 42.12, § 5(d)(1)(A). He therefore refused to approve any DIVERT agreement.

Goodard moved to dismiss the information, asserting that he had been denied due process and equal protection. Essentially, he claims that being assigned to County Criminal Court at Law Number 2, which never approves DIVERT agreements, deprived him of these rights. Because other defendants were in the same position as Goodard, the trial court held several joint hearings at which it discussed the matter with various defense counsel and heard testimony from representatives of the District Attorney's Office. On October 28, 2012, the trial court held a hearing on Goodard's amended motion to dismiss the information, in which six other defendants joined. Roger Bridgwater, the District Attorney's Office bureau chief in charge of the DIVERT program, appeared as the primary witness. The trial court questioned Bridgwater extensively about pretrial diversion and the DIVERT program in particular. The trial court questioned Bridgwater about a specific defendant who was charged with DWI and possession of marijuana and participated in a pretrial diversion program other than the DIVERT program. Bridgwater explained that that other diversion program was a pilot program for defendants who were ineligible for DIVERT due to mental health or drug issues. He stated that only about five defendants participated in the pilot

4

program in three months before the District Attorney's Office decided to discontinue it.

The trial court dismissed the information, explaining the basis for its decision was the discrepancy between the State's treatment of defendants involved in the pilot program as contrasted with its treatment of Goodard and the other defendants:

> . . . [W]hen I looked at this pretrial diversion, this DWI case for a person who also had a marijuana case . . . [and] wasn't required to plead guilty to DWI and got pretrial diversion, and now I get this response that it was some kind of pilot program, I tell you, that's invidious discrimination in my opinion. There's no question about it. I think it's shameful, absolutely shameful what [the District Attorney's] office is doing. I'm not able to identify—neutralize the taint of this, of what you all have been doing. I'm going to grant the Motion to Dismiss the Information.

The State appealed.

## Analysis

In his motion to dismiss the indictment, Goodard asserted that (1) he had been "arbitrarily denied the right to participate in a diversion program" and (2) because the trial court would not approve DIVERT agreements, he (like all other DWI defendants assigned to County Criminal Court at Law Number 2) was being treated differently from all "similarly situated" persons—namely persons charged with DWI in all the Harris County criminal courts at law other than Court Number

5

2.  Goodard contends that these actions violate his rights to due process and equal protection.

**I.      Motion to dismiss**

A trial court has no inherent authority to dismiss a case without the consent of the prosecutor.  *State v. Mungia*, 119 S.W.3d 814, 816 (Tex. Crim. App. 2003); *McNutt*, 2013 WL 682893, at *2; *Dinur*, 383 S.W.3d at 699.   In certain circumstances, a trial court may dismiss a case without the prosecutor's consent, if dismissal is authorized by constitution, statute, or common law.  *McNutt*, 2013 WL 682893, at *2; *Dinur*, 383 S.W.3d at 700.  For example, a court may dismiss a case without the prosecutor's consent when a defendant is denied a right to a speedy trial, there is a defect in the charging instrument, to remedy certain Sixth Amendment violations, or when a defendant is detained and no charging instrument is presented in violation of Article 32.01 of the Code of Criminal Procedure.  *Mungia*, 119 S.W.3d at 816; *McNutt*, 2013 WL 682893, at *2.  Other constitutional violations may support a trial court's dismissal of a case without the prosecutor's consent, but this is "a drastic measure only to be used in the most extraordinary circumstances."  *Mungia*, 119 S.W.3d at 817 (quoting *State v. Frye*, 897 S.W.2d 324, 330 (Tex. Crim. App. 1995)); *McNutt*, 2013 WL 682893, at *2.  A trial court errs by dismissing a case without the prosecutor's consent when "there is no constitutional violation, or where the appellee's rights were violated

6

but dismissal of the indictment was not necessary to neutralize the taint of the unconstitutional action." *Mungia*, 119 S.W.3d at 817; *McNutt*, 2013 WL 682893, at *2. In this case, Goodard moved for a dismissal on the grounds that his constitutional rights to due process and equal protection were violated. We address each alleged violation in turn.

## II. Due process

Goodard sought dismissal on the basis that his due process rights were violated when he was excluded from participating in a pretrial diversion program. Procedural due process prevents the government from depriving an individual of a protected liberty or property interest in an arbitrary manner. *Ex parte Montgomery*, 894 S.W.2d 324, 327 (Tex. Crim. App. 1995) (citing *Morrissey v. Brewer*, 408 U.S. 471, 92 S. Ct. 2593 (1972), and *Hewitt v. Helms*, 459 U.S. 460, 103 S. Ct. 864 (1983)); *McNutt*, 2013 WL 682893, at *3. "The interest at issue must amount to more than a 'unilateral hope.'" *Montgomery*, 894 S.W.2d at 327 (citing *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 101 S. Ct. 2460 (1981)); *McNutt*, 2013 WL 682893, at *3. "[R]ather the claimant must show an entitlement." *Montgomery*, 894 S.W.2d at 327 (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 109 S. Ct. 1904 (1989)); *McNutt*, 2013 WL 682893, at *3.

If a defendant pleads guilty or nolo contendere pursuant to a plea bargain agreement, due process may require the State to fulfill its end of the agreement. *DeRusse v. State*, 579 S.W.2d 224, 236 (Tex. Crim. App. 1979) (citing *Santobello v. New York*, 404 U.S. 257, 92 S. Ct. 495 (1971)); *McNutt*, 2013 WL 682893, at *3. However, a defendant has no absolute right to enter into a plea bargain. *Gaal v. State*, 332 S.W.3d 448, 457 (Tex. Crim. App. 2011) (citing *Morano v. State*, 572 S.W.2d 550, 551 (Tex. Crim. App. 1978)); *DeRusse*, 579 S.W.2d at 236; *see also Weatherford v. Bursey*, 429 U.S. 545, 561, 97 S. Ct. 837, 846 (1977); *McNutt*, 2013 WL 682893, at *3. Drawing an analogy to plea bargain cases, federal courts of appeals have concluded that a defendant does not have a constitutional right to be placed in pretrial diversion. *United States v. Richardson*, 856 F.2d 644, 647 (4th Cir. 1988); *United States v. Hicks*, 693 F.2d 32, 34 (5th Cir. 1982); *McNutt*, 2013 WL 682893, at *3.

Goodard has not identified any statutory or case law that creates a right or entitlement to be placed into pretrial diversion. Because there is no right or entitlement to enter into pretrial diversion, Goodard's due process rights were not implicated. *See Montgomery*, 894 S.W.2d at 327; *McNutt*, 2013 WL 682893, at *3. Because his due process rights are not implicated, the trial court erred if it dismissed the case on the basis of a perceived due process violation. *See Mungia*, 119 S.W.3d at 817 (stating trial court errs by dismissing case without prosecutor's

8

consent when there is no constitutional violation); *McNutt*, 2013 WL 682893, at *3.

### III. Equal protection

Goodard urged the trial court to dismiss the information on equal protection grounds. He contends that he is similarly situated to all other DIVERT-eligible defendants. He thus argues that his equal protection rights have been violated because DIVERT-eligible defendants who are assigned to County Criminal Court at Law Number 2 will not be placed into a pretrial diversion program, while the DIVERT-eligible defendants assigned to other courts will be. Although the District Attorney's Office knew that the trial court to which Goodard and others were assigned would not approve DIVERT agreements, it nevertheless did not offer pretrial diversion in another form to Goodard and the other eligible defendants, as it had to the participants in the "pilot program" for first-time DWI defendants with mental health issues.

"[A]ll persons similarly situated are guaranteed equal protection under the laws of this State and of the United States." *Nonn v. State*, 117 S.W.3d 874, 881–82 (Tex. Crim. App. 2003) (citing *Vasquez v. State*, 739 S.W.2d 37, 43 (Tex. Crim. App. 1987)); *McNutt*, 2013 WL 682893, at *3. Equal protection is implicated if a classification interferes with a fundamental right or burdens a suspect class. *Clark v. State*, 665 S.W.2d 476, 480–81 (Tex. Crim. App. 1984); *McNutt*, 2013 WL

9

682893, at *3 & n.2. If no fundamental rights or suspect classifications are involved, the challenged government action does not violate equal protection "so long as unequal treatment of persons is based upon a reasonable and substantial classification of persons." *Vasquez*, 739 S.W.2d at 43; *McNutt*, 2013 WL 682893, at *3. In other words, the classification will not be set aside if it is rationally related to a legitimate state interest. *Clark*, 665 S.W.2d at 481; *McNutt*, 2013 WL 682893, at *3. Additionally, equal protection does not require things that are "different in fact [to] be treated in law as though they were the same." *Downs v. State*, 244 S.W.3d 511, 518 (Tex. App.—Fort Worth 2007, pet. ref'd) (citing *Smith v. State*, 898 S.W.2d 838, 847 (Tex. Crim. App. 1995) (holding that different sentencing scheme for capital and non-capital defendants did not violate equal protection; all capital defendants were treated similarly)); *McNutt*, 2013 WL 682893, at *3.

Goodard contends that the State, acting through the District Attorney's Office, treats those DWI defendants assigned to County Criminal Court at Law Number 2 differently from DWI defendants whose cases are assigned to other courts. The record reflects that all DWI defendants offered the DIVERT program are treated similarly by the Harris County District Attorney's Office—they are offered and must sign the same agreement, which is subject to judicial approval. In this case, the trial court judge did not approve the agreement. The record shows

10

that all DWI defendants, including Goodard, are assigned to the county criminal courts at law randomly, not based on any suspect classification. In other words, the Harris County District Attorney's Office did not treat Goodard any differently than it treated all other DWI defendants offered the DIVERT program. Accordingly, there is no equal protection violation. *See McNutt*, 2013 WL 682893, at *4.

To the extent Goodard argues that the District Attorney's failure to allow him to participate in the "pilot program" resulted in an equal protection violation, we disagree. The evidence showed the pilot program was designed for persons with drug-use or mental health issues who would not qualify for the DIVERT program. The pilot program was different, and it was designed for a group that differed from run-of-the-mill first-time DWI offenders. Because the pilot program was based on the needs of defendants who were "different in fact" from Goodard, there is no equal protection violation. *McNutt*, 2013 WL 682893, at *4; *see Wesbrook v. State*, 29 S.W.3d 103, 113 (Tex. Crim. App. 2000) (holding no equal protection violation from legislature's decision to treat capital murder defendants differently from other murder defendants).

## Conclusion

Because there was no constitutional violation, we hold that the trial court erred by dismissing this case without the prosecutor's consent. *McNutt*, 2013 WL 682893, at *4. We reverse the trial court's judgment dismissing the information and remand this cause for further proceedings.

 

Michael Massengale
Justice

Panel consists of Justices Jennings, Bland, and Massengale.

Do not publish.   TEX. R. APP. P. 47.2(b).